UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

GIRVAN RICKETTS,

Plaintiff,

- against -

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THE PORT AUTHORITY POLICE DEPARTMENT, PORT AUTHORITY TRANS-HUDSON CORP., ROBERT MANFRE, INDIVIDUALLY AND IN HIS CAPACITY AS A PORT AUTHORITY POLICY OFFICER.

Defendants.

---------------------------------------------------------------- x

MEMORANDUM DECISION AND ORDER

06-cv-3820 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff commenced this civil rights action against Police Officer Robert Manfre, the Port Authority of New York and New Jersey, and related entities. Plaintiff asserts claims under 42 U.S.C. §§ 1981, 1983, 1985(3) and New York law to recover $70,000,000 as compensation for defendants' allegedly unlawful actions committed after plaintiff was involved in a minor traffic incident. Defendants move for summary judgment, dismissing plaintiff's civil rights claims for racial discrimination, conspiracy, malicious prosecution, and punitive damages.[1]

## MATERIAL FACTS

On March 8, 2005, plaintiff, a black Jamaican, was struck by a tractor-trailer while crossing the George Washington Bridge in his pickup truck. Declaration of Ronald P. Hart. dated May 22, 2008 ("Hart. Decl."), Exhibit D ("Ricketts Depo.") Tr. at 57, 58; Complaint at

---

[1] In his brief, plaintiff voluntarily withdrew his claims for conspiracy under 42 U.S.C. § 1985. See Pl. Opp. Memo. at 2.

¶ 17.  After the collision, plaintiff exited his pickup truck and approached the driver of the tractor-trailer, a white male.  Ricketts Depo. Tr. 74.  Plaintiff alleges that the driver of the tractor-trailer got out of his vehicle and began to photograph plaintiff's truck.  Ricketts Depo. Tr. at 75.  As plaintiff and the other driver discussed the damage caused by the collision, "the situation was spiraling out of control" and escalated into a "crisis".  Complaint at ¶ 24.  The tractor-trailer driver testified that while he photographed plaintiff's truck, plaintiff "was yelling ... flailing his arms around and pacing in an excited way."  Deposition of Daniel Dunn ("Dunn Depo.") Tr. 13:13-18.  The truck driver also testified that he "felt threatened" by plaintiff's behavior.  Id. at 27.  Plaintiff, on the other hand, testified that when he attempted to calmly speak with the tractor-trailer driver about the damage to his pickup truck, the tractor-trailer driver responded with expletives and other offensive language.  Ricketts Dep. Tr. at 58.

Police Officer Manfre arrived at the accident scene after an uninvolved third party contacted the police.  Hart Decl., Exhibit B ("Manfre Depo.") Tr. at 19-20.  The officer testified that when he approached plaintiff's vehicle, plaintiff "got out and[,] in a loud voice" recounted his version of what had occurred.  Id. at 29.  The officer also testified that plaintiff yelled at him repeatedly.  Id. at 36, 37.  The officer described plaintiff's demeanor as extremely agitated and stated that as plaintiff became more enraged over the damage to his pickup truck, the officer noticed "veins bulging out of [plaintiff's] neck and "little pieces of saliva coming from his mouth".  Id. at 56:5-25.  Plaintiff admits that he used offensive language in describing the accident to Officer Manfre.  Complaint at ¶ 31.  However, plaintiff contends that when he used foul language, he was "merely repeat[ing] to the officer what the driver of the tractor-trailer [had] said" to plaintiff previously.  Id.  The officer testified that after plaintiff uttered those offensive

words, he advised plaintiff that he would place plaintiff under arrest if plaintiff refused to "calm down".  Manfre Depo. Tr. at 60, 70.

Officer Manfre testified that because plaintiff continued using foul language and aggressive body movements, he placed plaintiff under arrest and issued a summons for disorderly conduct.  Manfre Depo. Tr. at 67-69.  The officer also radioed another patrol unit for backup.  Id. at 71; Hart Decl., Exhibit G.  After the backup officers arrived, plaintiff's pickup truck was subjected to a search and towed to the New Jersey side of the bridge while plaintiff was taken to the Port Authority police station.  Manfre Depo. Tr. 67-69; Ricketts Depo. Tr. at 129-131.  Plaintiff states that, after spending approximately one hour at the police station, he returned to his pickup truck and discovered that approximately $2000 had been removed from an envelope in his glove compartment.  Id. at 111-13, 136.  The police officer who accompanied plaintiff to his car did not write a police report regarding the missing money, but instead instructed plaintiff to wait in the police station to speak with a supervisor.  Id. at 158.  Although a supervisor did eventually speak with plaintiff, that supervisor did not draft a report of plaintiff's allegations.  Id. at 159, 166-68.  Instead, the supervisor provided plaintiff with a form on which plaintiff could write down a statement about the missing money.  Id. at 180.  Plaintiff refused this opportunity to draft a statement.  Id. at Tr. 181.

On May 19, 2005, plaintiff appeared in court to answer the summons issued to him by Police Officer Manfre.  Ricketts Depo. Tr. at 278.  The court dismissed the case against plaintiff because it found the summons to be "legally insufficient".  Hart Decl., Exhibit J.

Under Rule 56(b) of the Federal Rules of Civil Procedure, a defendant may move at any time for summary judgment on all or part of plaintiff's claims.  Fed. R. Civ. P. 56(b).  A

defendant's motion for summary judgment will only be granted "where there exists no genuine issue of material fact and, based on the undisputed facts, the [defendant] is entitled to judgment as a matter of law." See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). "[I]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994). However, the non-moving party cannot defeat a motion for summary judgment by simply "rely[ing] on conclusory allegations or unsubstantiated speculation." Scotto, 143 F.3d at 114. The evidence proffered by the non-moving party must do more than establish a "colorable" claim; it must demonstrate that a reasonable jury could find in the non-movant's favor. Id.

### § 1983 Claims Against the Port Authority

Plaintiff asserts claims under 42 U.S.C. § 1983 against the Port Authority for "false arrest/false imprisonment unlawful detention and malicious prosecution." Plaintiff maintains that the Port Authority is liable for violations of his constitutional rights under § 1983 because it inadequately trains its police officers on how to protect "the rights of citizen suspects during arrests." Pl. Opp. Memo. at 5.

Section 1983 provides redress for citizens who have suffered unlawful deprivation of their civil rights at the hands of persons acting under color of state law. 42 U.S.C. § 1983. Courts of this district have held that the Port Authority qualifies as a "person" for the purpose of establishing liability under § 1983. See, e.g., Cumberbatch v. Port Auth. of New York and New Jersey, No. 03 civ 749, 2006 WL 3543670, at * 6 (S.D.N.Y. Dec. 5, 2006) (citing Monell v.

Dep't. of Social Svcs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978)); Mack v. Dep't. of Social Svcs., 225 F. Supp.2d 376, 383 (S.D.N.Y. 2002).

To hold the Port Authority liable under § 1983 for its failure to train police officers, plaintiff must establish that the Port Authority was alerted to deficiencies in its training policy and that it "exhibited deliberate indifference" to the potentially unlawful consequences of those deficiencies. See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). In this context, "deliberate indifference" can be shown by proof that a defendant received "repeated complaints of civil rights violations" where those complaints were not investigated or where that defendant made "no meaningful attempt ... to forestall further incidents." Id. Plaintiff may also establish defendant's "deliberate indifference" by presenting expert testimony showing that a practice condoned by the police department is "particularly dangerous because it presented an unusually high risk that constitutional rights would be violated" and that it "was contrary to the practice of most police departments." Id. Nevertheless, "proof of a single incident of unconstitutional activity is not sufficient to impose liability" on a municipal authority under § 1983 "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." See City of Oaklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436 (1985).

Plaintiff does not specifically allege the existence of any policy or practice implemented by the Port Authority, and plaintiff adduces no evidence of inadequacies in the Port Authority's police training program. Furthermore, there is no evidence in the record that the Port Authority ever received complaints about the inadequacy of its officer training. There are no facts giving rise to an inference that the Port Authority acted with deliberate indifference. Rather, plaintiff

anchors his §1983 claim on Officer Manfre's deposition testimony that he received no specific training on how to make an arrest on the George Washington Bridge.  See Manfre Depo. Tr. at 8-9.  Plaintiff argues that this statement proves that the Port Authority fails to "train, supervise, discipline or in any other way control" its officers.  See Complaint at ¶ 49.  Reference to this testimony does not support plaintiff's claim.  Officer Manfre testified that he completed extensive training at the police academy and that he also received on the job training when he began working for the Port Authority.  See Manfre Depo. Tr. at 7-8.  Plaintiff has failed to proffer facts sufficient to hold the Port Authority liable for violations of his constitutional rights under § 1983.

Moreover, plaintiff has failed to demonstrate that he suffered constitutional violations to support his § 1983 claims.  Plaintiff argues that his constitutional rights were violated when he was falsely arrested and detained on March 8, 2005.  Complaint at ¶ 50.  "A § 1983 claim based on alleged false arrest will not lie if the arrest was supported by probable cause."  Warheit D.D.S. v. City of New York, 271 Fed. Appx. 123, 124 (2d Cir. 2008).  To determine whether probable cause exists, this Court must analyze "the totality of the circumstances" surrounding plaintiff's arrest to assess whether the police have "knowledge or reasonably trustworthy information of facts and circumstances that was sufficient to warrant a person of reasonable caution in the belief" that plaintiff was engaged in disorderly conduct.  See id. at 125.

The record in this case does not establish that plaintiff's arrest was made without probable cause.  Plaintiff proffers no evidence of any improper motive or behavior on the part of the arresting officer or the Port Authority.  On the contrary, plaintiff's own allegations characterize the situation as "spiraling out of control" and as growing to a "crisis" by the time the

arresting officer arrived. Complaint at ¶ 24; see also Manfre Depo. Tr. at 73 (describing Officer Manfre's assessment of whether plaintiff posed a threat to or frightened other persons); id. at 71 (Officer Manfre's testimony that plaintiff's erratic conduct caused the officer to fear for his safety); Dunn Depo. Tr. at 15 (tractor-trailer driver's testimony that plaintiff's conduct caused him to feel "threatened"). It is also undisputed that plaintiff used expletives and uttered offensive words when speaking with the arresting officer, notwithstanding plaintiff's explanations that he was only repeating what the tractor-trailer driver had previously said. Complaint at ¶ 31. Moreover, the record reflects that at least one witness other than the arresting officer noted plaintiff's erratic and aggressive behavior prior to plaintiff's arrest. See, e.g., Dunn Depo. Tr. at 13. Thus, taking into consideration plaintiff's description of the scene and the relevant witness testimony, the record in this case cannot support an inference that plaintiff's arrest was made without probable cause. Accordingly, plaintiff cannot base his § 1983 claims on his arrest.

Furthermore, the finding that Officer Manfre had probable cause to arrest plaintiff requires dismissal of plaintiff's federal and state claims for false imprisonment and malicious prosecution. See Jones v. J.C. Penny's Department Stores, Inc., No. 07 civ 2870, 2009 WL 765001, at * 2 (2d Cir. Mar. 25, 2009).[2]

---

[2] Moreover, plaintiff's state law claim for malicious prosecution is also deficient for the independent reason that plaintiff has failed to demonstrate that the dismissal of the disorderly conduct charge constituted "favorable termination". See O'Brien v. Alexander, 101 F.3d 1479, 1486 (2d Cir. 1996) (malicious prosecution claim requires proof of either a successful trial on the merits or "an act of withdrawal or abandonment on the part of the prosecutor); see also Martin v. Columbia Greene Humane Soc., 17 A.D.3d 839, 841, 793 N.Y.S.2d 586, 588 (N.Y. App. Div. 1995) (dismissing malicious prosecution claims where the record gave "no indication" that the voluntary withdrawal without prejudice of the complaint constituted a formal abandonment of the proceeding). The record in this case shows that the New York court dismissed the disorderly conduct charge against plaintiff because it determined that the summons issued at the time of plaintiff's arrest was legally deficient. See Hart Decl., Exhibit J. That court did not reach the merits of the case, and plaintiff has adduced no evidence that the prosecutor either entered a *nolle prosequi* or was barred from re-filing any accusatory instrument. Compare Smith-Hunter, 95 N.Y.2d at 198, 734 N.E.2d at 754. Accordingly, plaintiff has not sufficiently demonstrated that the proceeding was terminated in his favor. See MacFawn v. Kresler, 88 N.Y.2d 859, 860, 666 N.E.2d 1359, 1359 (N.Y. 1996).

**RACIAL DISCRIMINATION UNDER §§ 1981**

Plaintiff alleges that defendants violated his constitutional rights by effectuating a racially motived arrest and prosecution. "Section 1981 bars certain racially motivated and purposefully discriminatory acts." Yusuf v. Vassar College, 35 F.3d 709, 714 (2d Cir. 1994). To state a cognizable claim under this provision, a plaintiff must establish, with specificity, events which "constitute intentional discrimination" and "circumstances giving rise to a plausible inference of racially discriminatory intent." Id. at 713.

Plaintiff alleges that "[u]pon information and belief ... [d]efendants do not treat white citizens in the same manner they treat citizens who are black or nonwhite." Complaint at ¶ 16. Plaintiff urges this Court to infer that his arrest was racially motivated because 1) plaintiff is black and his arresting officer was white, and 2) the white tractor-trailer driver was treated "with professionalism, respect and courtesy" while plaintiff was "berated". See Pl. Opp. Memo. at 8-9. Plaintiff does not, however, allege that the police officer, his supervisors, or any defendant made racially offensive remarks or, in any other way, exhibited racial animus. Plaintiff also fails to adduce evidence that any other white and non-white suspects are treated differently by Port Authority police. Therefore, plaintiff has presented no facts giving rise to an inference that any of the defendants' actions were racially motivated. Such conclusory accusations of racial discrimination cannot state a viable claim under § 1981. See Singh v. Dist. Counsel 37, 211 Fed. Appx. 20, 21 (2d Cir. 2006).

## CONCLUSION

Defendants' motion for summary judgment, dismissing plaintiff's civil rights claims for racial discrimination, conspiracy, malicious prosecution, punitive damages, and attorneys' fees, is GRANTED.[3]

Dated: New York, New York
March 30, 2009

SO ORDERED:

GEORGE B. DANIELS
United States District Judge

[3] Requests for punitive damages and attorneys' fees do not create a separates cause of action. See Williams v. Walsh, 558 F.2d 667, 671 (2d Cir. 1977); see also 42 U.S.C. § 1988(b). Moreover, plaintiff's failure to state actionable claims under §§ 1981, 1983, 1985 or for malicious prosecution under state law renders any request for punitive damages and attorney's fees moot.